IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION



PERRY L. DUNNAM, §
　　　　　　　　　　　　 §
　　　　Plaintiff, §
　　　　　　　　　　　　 §
VS. § NO. 4:06-CV-777-A
　　　　　　　　　　　　 §
DEE ANDERSON, SHERIFF, §
TARRANT COUNTY, TEXAS, §
ET AL., §
　　　　　　　　　　　　 §
　　　　Defendant. §

MEMORANDUM OPINION
and
ORDER

　　　　On February 8, 2008, defendants Christen Jarvis ("Jarvis"), Jay A. Rotter ("Rotter"), and Roger K. Russell ("Russell") filed a motion for summary judgment in the above-captioned action.[1] Plaintiff, Perry L. Dunnam, responded on February 22, 2008. Having considered defendants' motion, plaintiff's response, the summary judgment evidence, and applicable authorities, the court concludes that defendants' motion for summary judgment should be granted.

---

[1] Jarvis, Rotter, and Russell are the only remaining defendants in this action. By order signed February 28, 2007, the court dismissed all claims asserted by plaintiff against defendants Tarrant County, Texas, Sheriff Dee Anderson, Chief Deputy K. C. Blanch, and Officer Allen. By separate orders signed December 5, 2007, the court dismissed all claims asserted by plaintiff against Lieutenant Michael Gravitt and Sergeant Whitis.

I.

## Plaintiff's Claims[2]

Plaintiff alleges that his civil rights have been violated by the defendants' use of excessive force against him.[3]

II.

## The Motion for Summary Judgment

Defendants maintain that they are entitled to qualified immunity, which requires dismissal of all of plaintiff's claims.

III.

## Applicable Summary Judgment Principles

A party is entitled to summary judgment on all or any part of a claim as to which there is no genuine issue of material fact and as to which the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The moving party has the initial burden of showing that there is no genuine issue of material fact. Anderson, 477 U.S. at 256. The movant may discharge this burden by pointing out the absence of evidence to support one or more essential elements of the nonmoving party's claim "since a

---

[2]Plaintiff's active pleading in this action is his second amended complaint, filed November 6, 2007.

[3]Plaintiff concludes his second amended complaint by stating that "[t]he above mentioned facts constitute an excessive use of force, denial of medical care, assault, violation of the civil rights of a prisoner, retaliation, theft of property, and denial of access to courts." Second Am. Compl. at 17. However, the court agrees with defendants that, to the extent plaintiff's complaint would support claims other than excessive force, which the court doubts, those claims do not appear to be directed at these defendants. In any event, even if plaintiff had intended to assert those claims against these defendants, he has not adduced any evidence as would preclude summary adjudication in favor of the remaining defendants on any of his claims.

2

complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 323-25 (1986). Once the moving party has carried its burden under Rule 56(c), the party opposing the motion may not rest on mere allegations or denials of pleading, but must set forth specific facts showing a genuine issue for trial. Anderson, 477 U.S. at 256. To meet this burden, the nonmovant must "identify specific evidence in the record[] and [] articulate the 'precise manner' in which that evidence support[s] [its] claim[s]." Forsyth v. Barr, 19 F.3d 1527, 1537 (5th Cir. 1994). An issue is material only if its resolution could affect the outcome of the action. Anderson, 477 U.S. at 248. Unsupported allegations, conclusory in nature, are insufficient to defeat a proper motion for summary judgment. Simmons v. Lyons, 746 F.2d 265, 269 (5th Cir. 1984).

The standard for granting a motion for summary judgment is the same as the standard for rendering judgment as a matter of law. Celotex Corp., 477 U.S. at 323. If the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 597 (1986). See also Boeing Co. v. Shipman, 411 F.2d 365, 374-75 (5th Cir. 1969) (en banc) (explaining the standard to be applied in determining whether the court should enter judgment on motions for directed verdict or for judgment notwithstanding the verdict).

IV.

Analysis

A. <u>Facts Established as a Matter of Law</u>

An overview of pertinent facts established as a matter of law by the summary judgment record is as follows:[4]

From approximately November 30, 2005, to November 9, 2006, plaintiff was incarcerated in the Tarrant County Jail. On March 26, 2006, officers took contraband lotion from plaintiff's cell during a "shakedown." Corporal Whitis ("Whitis") requested that defendants assist him in removing plaintiff from his cell, and that they escort him to Level 2 of the Tarrant County Jail until he could be rehoused. Russell and Jarvis handcuffed plaintiff for removal from his cell, and plaintiff was upset and yelling obscenities. Jarvis told plaintiff to stop yelling.

As Russell and Jarvis led plaintiff down the hall, he lunged at Whitis. Russell and Jarvis pushed him against the wall to stop his resistence and to protect Whitis. Plaintiff stopped resisting but continued to yell and scream. Russell and Jarvis placed plaintiff in a holdover cell, removed his handcuffs, and closed the door. Plaintiff began to kick the cell door, and

---

[4]Under one of the standards adopted by the Supreme Court, the facts are established as a matter of law. In <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242 (1986), the Supreme Court said that the standard for granting a motion for summary judgment "mirrors the standard for a directed verdict," which is that "the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict." <u>Id.</u> at 250. In his declaration, plaintiff disputes some of these facts; however, a video of the incident in question submitted with the June 7, 2007, motion to dismiss/motion for summary judgment filed by defendant Sergeant Raymond Whitis, leads the court to the one reasonable conclusion that defendants are entitled to qualified immunity.

4

continued to kick the door despite being order to stop. Lieutenant Johnson, a superior officer, ordered defendants to remove plaintiff from the holdover cell and to place him in a restraint chair. While defendants attempted to restrain plaintiff in the chair, he continued yelling obscenities at them, becoming more angry and boasting of his strength.

Once plaintiff was in the chair, partially restrained, defendants had difficulty restraining his torso because of his continued resistance and aggressive behavior. Rotter pointed a can of Oleoresin Capsicum ("OC") foam toward plaintiff and advised plaintiff not to resist defendants' efforts to restrain him. Rotter advised plaintiff that he would be sprayed if he resisted the officers. As defendants continued to attempt to restrain plaintiff, he suddenly leaned toward Jarvis, as if to try to bite him or spit on him. Plaintiff slowly pronounced an expletive beginning with the letter "p," deliberately emphasizing the "p," in an apparent effort to spit on Jarvis. In response, Jarvis attempted to restrain plaintiff's head to prevent further spitting. Plaintiff then tried to bite Jarvis. In an effort to protect Jarvis and restore order to the situation, Rotter deployed OC foam toward plaintiff's face.

The OC foam did not have an effect on plaintiff; he continued yelling at defendants and resisting their efforts to restrain him. Jarvis kept his hand in front of plaintiff's face to prevent further spitting and bite attempts, but plaintiff lunged under Jarvis's hand and attempted to spit on him again.

5

Russell ordered plaintiff to calm down, and Rotter ordered plaintiff to stop resisting the officers. These orders had no effect, and accordingly Rotter deployed another burst of OC foam toward plaintiff's face. Again, the foam seemed to have little effect. Plaintiff maintained his efforts to spit on Jarvis. Defendants believed that plaintiff was now attempting to spit the OC foam on them.

A spit hood was placed on plaintiff, and while it was on plaintiff continued to spit. He began sticking his tongue out and making noises like an animal. In his aggression, plaintiff was able to remove the spit hood. Ultimately, four officers were required to push plaintiff back into the chair so his torso could be restrained. Once plaintiff was restrained, Rotter read the OC foam administrative warning to plaintiff. Plaintiff assured defendants at that time that he would be filing a lawsuit based on what had happened. Shortly after the incident, plaintiff was removed from the restraint chair and taken to the shower to rinse off the OC foam.

Plaintiff did not appear to defendants to be injured as a result of the incident, and he did not seek medical treatment immediately thereafter. Though he filed grievances on a regular basis, plaintiff did not complain of a sore throat until May 8, 2006. In the intervening time period between the March 26 incident and plaintiff's May 8 grievance, plaintiff continued his aggressive and disruptive behavior, being involved in several other incidents where officers had to resort to physical

restraint or the use of pepper spray.

B. <u>Qualified Immunity</u>

In their performance of discretionary functions, government officials are generally granted a qualified immunity. <u>Wilson v. Layne</u>, 526 U.S. 603, 609 (1999). The qualified immunity shields officials from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982). A state official exercising discretionary authority will be shielded from personal liability "unless at the time and under the circumstances of the challenged conduct all reasonable officials would have realized that it was proscribed by the federal law on which the suit is founded." <u>Pierce v. Smith</u>, 117 F.3d 866, 871 (5th Cir. 1997). "Qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" <u>Id.</u> (quoting <u>Hunter v. Bryant</u>, 502 U.S. 224, 229 (1991)).

The court conducts a bifurcated qualified immunity analysis. <u>Collins v. Ainsworth</u>, 382 F.3d 529, 537 (5th Cir. 2004) (citing <u>Bazan ex rel. Bazan v. Hidalgo County</u>, 246 F.3d 481, 490 (5th Cir. 2001)). First, the court must determine if the claimant has alleged that the official violated the claimant's clearly established constitutional or statutory rights. <u>Michalik v. Hermann</u>, 422 F.3d 252, 257 (5th Cir. 2005). <u>See also</u> <u>Collins</u>, 382 F.3d at 537. If the claimant has alleged such a violation, the court must then consider "whether the official's conduct was

7

objectively reasonable under the law at the time of the incident." Michalik, 422 F.3d at 258. See also Harlow, 457 U.S. at 819; Collins, 382 F.3d at 537. When a defendant in a § 1983 action pleads qualified immunity and shows that he or she is a government official whose position involves the exercise of discretion, "the plaintiff then has the burden 'to rebut this defense by establishing that the official's allegedly wrongful conduct violated clearly established law.'" Pierce, 117 F.3d at 871-72 (quoting Salas v. Carpenter, 980 F.2d 299, 306 (5th Cir. 1992)).

Defendants argue, in the alternative, that plaintiff cannot establish that his constitutional rights were violated, and that, in any event, defendants' actions were objectively reasonable. The court agrees that plaintiff cannot establish that his constitutional rights were violated;[5] however, the court need not even reach the merits of plaintiff's claim because plaintiff has failed to adduce a genuine issue of material fact as to the objective reasonableness of defendants' actions.[6] Plaintiff

---

[5] "To prevail on an eighth amendment excessive force claim, a plaintiff must establish that force was not 'applied in a good-faith effort to maintain or restore discipline, but maliciously and sadistically to cause harm,' and that he suffered an injury." Eason v. Holt, 73 F.3d 600, 601-02 (5th Cir. 1996) (quoting Hudson v. McMillian, 503 U.S. 1, 7 (1992)). The record in this action clearly establishes that defendants' use of force was applied in a good-faith effort to maintain and restore discipline.

[6] Defendants do not seem to contend that plaintiff has failed to allege the violation of clearly established right. Under the objective reasonableness inquiry, the second prong of the qualified immunity analysis, the question for the court is "whether reasonably competent officers would have known that their actions violated law which was clearly established at the time of the disputed action." Collins v. Ainsworth, 382 F.3d 529, 537 (5th Cir. 2004). "Law enforcement officers who reasonably but mistakenly commit a constitutional violation are entitled to immunity." Id. The
(continued...)

argues that everything the officers did to him was in response to him calling one of them a name, and that he did not try to bite Jarvis. The record clearly establishes that this is not the case; rather, plaintiff's aggressive and unruly behavior compelled defendants to take the actions they did to restore order and protect themselves. Plaintiff argues that "there was no safety issue . . . I was strapped to the chair[.] [T]he level of force was not even necessary to protect [the officers] as I [was] handcuffed and shackled . . . the use of gas was disproportionate under the circumstances and malicious." Pl.'s Resp. at 9-10. The court disagrees. The record clearly establishes as a matter of law that plaintiff continued to resist and display aggressive behavior, spitting on and attempting to bite the officers as they attempted to restrain him. Given the way he behaved, plaintiff has not shown, and could not possibly show based on the record before the court, that defendants' actions were anything other than objectively reasonable.

---

⁶(...continued)
questioned actions "are held to be objectively reasonable unless <u>all</u> reasonable officials in the defendant's circumstances would have then known that the defendant's conduct violated the United States Constitution or the federal statute as alleged by the plaintiff." <u>Thompson v. Upshur County, Tex.</u>, 245 F.3d 447, 457 (5th Cir. 2001).

## VI.

## Order

For the reasons discussed above, the court concludes that the motion for summary judgment filed by defendants should be granted.

The court ORDERS that all claims and causes of action asserted by plaintiff against defendants in the above-captioned action be, and are hereby, dismissed with prejudice.

SIGNED February 29, 2008.

_____
JOHN McBRYDE
United States District Judge